IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36951-0-III |
| | ) | (consolidated with |
| Respondent, | ) | No. 36952-8-III) |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| STEPHEN BENTON HARRIS JR., | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — RAP 2.4(b) allows appellate review of prior orders or

rulings, even those that were immediately appealable, if they prejudicially affect the

decision designated in the notice. One question before us is whether RAP 2.4(b) permits

appellate review of a criminal judgment and sentence when the decision designated in the

notice is an order revoking a drug offender sentencing alternative (DOSA) sentence.

Supreme Court authority constrains us to review the judgment and sentence.

Nevertheless, we generally affirm.

FACTS

Stephen Harris pleaded guilty to two counts of possession of a controlled

substance and one count of resisting arrest. On August 1, 2018, the trial court entered its

judgment and sentence. Specifically, the trial court imposed a DOSA sentence for the

drug offenses, determined that Harris was indigent, and imposed a number of community

custody conditions and various fees and assessments together with interest.  The judgment

and sentence explicitly notified Harris he had 30 days to file a direct appeal and one year

to file a collateral attack.

Harris repeatedly violated the terms of his DOSA sentence.  The State moved to

revoke Harris's DOSA sentence and have him serve his sentence in confinement.  On

June 17, 2019, the trial court heard argument and granted the State's motion.  On July 12,

2019, Harris appealed the DOSA revocation order.

## ANALYSIS

On appeal, Harris raises issues about his August 1, 2018 sentence.  He does not

raise any issue about the June 17, 2019 DOSA revocation order.  The State, citing

RAP 5.2(a), urges us to dismiss the appeal of the sentence as untimely.  Harris, citing

RAP 2.4(b), argues his appeal of the sentence is timely.

SCOPE OF REVIEW

Generally, an appellate court will "review the decision or parts of the decision

designated in the notice of appeal . . . and other decisions in the case provided in sections

(b), (c), (d), and (e)."  RAP 2.4(a).  RAP 2.4(b) provides:

> The appellate court will review a trial court order or ruling not designated in
> the notice, including an appealable order, if (1) the order or ruling
> prejudicially affects the decision designated in the notice, and (2) the order
> is entered, or the ruling is made, before the appellate court accepts review.

This allows a defendant to avoid a "trap for the unwary . . . that a failure to appeal an appealable order could prevent its review upon appeal from a final judgment." *Adkins v. Alum. Co. of Am.*, 110 Wn.2d 128, 134, 750 P.2d 1257, 756 P.2d 142 (1988).

In *Adkins*, the first trial resulted in a favorable verdict for the plaintiff, but the court granted a mistrial due to juror misconduct. The second trial resulted in a defense verdict, from which the plaintiff appealed. One of the issues on appeal was whether the appellate court should review the ruling granting the mistrial. The *Adkins* court concluded that the motion for mistrial was reviewable, reasoning:

> The requirements of RAP 2.4(b) are satisfied here. The second trial would not have occurred absent the trial court's decision granting the motion for a mistrial; thus the decision prejudicially affected the final decision which was designated in the notice of appeal. Obviously the trial court's action granting the mistrial occurred before the Court of Appeals accepted review.

*Id.* at 134-35.

Our Supreme Court discussed RAP 2.4(b) in *Franz v. Lance*, 119 Wn.2d 780, 781, 836 P.2d 832 (1992). There, the trial court orally ruled in favor of the plaintiffs on the trespass claim and stated it was inclined to award attorney fees.[1] In October 1990, the

---

[1] The Supreme Court's opinion in *Franz* was per curiam and omitted most of the underlying facts. We obtain the facts for this paragraph from the subsequent unpublished case of *Franz v. Lance*, noted at 72 Wn. App. 1042, 1994 WL 16180036.

trial court entered its findings and conclusions, together with its judgment quieting title and awarding damages. It reserved ruling on attorney fees for a later time. Two months later, the trial court issued a letter opinion awarding over $14,000 in attorney fees and costs. Supplemental findings and conclusions were entered in February 1991, and a supplemental judgment was entered in June 1991. The Court of Appeals dismissed the Lances' January 2, 1991 appeal of the October 1990 judgment as untimely. The Lances sought and received discretionary review.

The Supreme Court in *Franz* reversed and directed the Court of Appeals to review the October 1990 judgment. Citing the language of RAP 2.4(b), the *Franz* court held that the trial court's judgment on the merits "prejudicially affected its subsequent award." *Franz*, 119 Wn.2d at 782. The court concluded:

> We hold the trial court's October 29, 1990, judgment on the merits of the quiet title and trespass issues prejudicially affected its subsequent award of attorney fees and costs. That award was imposed against the Lances as a sanction under CR 11 and RCW 4.84.185 for filing a baseless answer to the Franzes' complaint and for filing a frivolous counterclaim. The award therefore must stand or fall based on the findings and conclusions the trial court entered in support of the 1990 judgment. Under the reasoning in [prior cases], the Franzes' timely notice of appeal from the award of sanctions should enable them to obtain review of the underlying judgment.

*Id.*

4

Here, the question is whether the first prong of RAP 2.4(b) is satisfied. In other words, does the October 2018 judgment and sentence prejudicially affect the June 2019 order revoking the DOSA sentence?

In *Adkins*, the Supreme Court held that the order granting mistrial prejudicially affected the second trial, because the second trial "would not have occurred absent" the earlier decision. 110 Wn.2d at 134. Applying this standard here, the judgment imposing the DOSA sentence prejudicially affected the order revoking the DOSA sentence. This is because the order revoking the DOSA sentence could not have occurred absent the DOSA sentence.

In *Franz*, the Supreme Court held that the findings and conclusions in the original judgment prejudicially affected the sanctions award because the sanctions award "must stand or fall" based on the findings and conclusions the trial court entered in the original judgment. 119 Wn.2d at 782. Applying this standard here, the judgment imposing the DOSA sentence *did not* prejudicially affect the order revoking the DOSA sentence. This is because the order revoking the DOSA sentence does not stand or fall on the sentence. Rather, it stands or falls on whether Harris complied with the conditions of his DOSA sentence.

So which standard do we apply? In *Right-Price Recreation, LLC v. Connells Prairie Community Council*, 146 Wn.2d 370, 46 P.3d 789 (2002), the court denied that the rule in *Franz* narrowed the rule in *Adkins*. *Id.* at 380. The court explained, the *Franz* "holding is a reiteration of the *Adkins* court's recognition that the order appealed from would not have happened but for the first order." *Id.* We are constrained to apply *Adkins*'s "but for" rule here and conclude that review of Harris's sentence is appropriate.[2]

COMMUNITY CUSTODY CONDITIONS

Harris contends the trial court erred by imposing the community custody condition prohibiting him from having contact with Department of Corrections (DOC) identified drug offenders. The State rightly points out that this issue is not preserved for appeal. However, because it is simpler to discuss why Harris's contention is incorrect rather than why this was not a manifest error, we exercise our discretion in reviewing this issue.

This court reviews challenges to community custody conditions for abuse of discretion and will reverse only when they are manifestly unreasonable. *State v. Valencia*, 169 Wn.2d 782, 791-92, 239 P.3d 1059 (2010). A community custody

---

[2] Harris's RAP 2.4(b) scope of review argument was raised in reply to the State's RAP 5.2(a) timeliness argument. The State did not have an opportunity to address RAP 2.4(b). Because we are affirming (except on an issue conceded by the State), we did not ask the State to provide additional briefing. The State is invited to address RAP 2.4(b) in a reconsideration motion if it believes we have erred on this issue.

condition is vague if it does not give fair warning of the prohibited conduct to the defendant. *State v. Bahl*, 164 Wn.2d 739, 752-53, 193 P.3d 678 (2008). "If 'persons of ordinary intelligence can understand what the [condition] proscribes, notwithstanding some possible areas of disagreement, the [condition] is sufficiently definite.'" *Id.* at 754 (quoting *City of Spokane v. Douglass*, 115 Wn.2d 171, 179, 795 P.2d 693 (1990)).

A defendant's right to association may be restricted if it is reasonably necessary to accomplish the essential needs of public order. *State v. Riley*, 121 Wn.2d 22, 37-38, 846 P.2d 1365 (1993). This includes restricting a defendant from contact with known drug offenders in order to curb recurring use of illegal drugs. *State v. Hearn*, 131 Wn. App. 601, 609, 128 P.3d 139 (2006).

This court, in *Hearn*, already decided that prohibiting a defendant from contact with "known drug offenders" is a constitutional custody condition. *Id.* The inclusion of "DOC [identified] drug offenders" does not change this. Clerk's Papers at 92. Those offenders who the DOC has identified as drug offenders is a list the offender is capable of obtaining, and a person of ordinary intelligence can understand this prohibition is from contact with anyone on this list.

LEGAL FINANCIAL OBLIGATIONS (LFOs)

Harris contends the trial court erred by imposing a fee for his urinalysis tests and for the supervision costs. He also contends the trial court erred by imposing interest on his LFOs. We agree in part.

Supervision costs of community custody are discretionary and are subject to the same inquiry regarding a defendant's ability to pay as other discretionary LFOs. *State v. Lundstrom*, 6 Wn. App. 2d 388, 396 n.3, 429 P.3d 1116 (2018), *review denied*, 193 Wn.2d 1007, 443 P.3d 800 (2019). Here, the trial court found that Harris was indigent and waived other discretionary LFOs. Consistent with this, it should have waived the costs of community custody supervision as well.

However, the State contends these costs are moot because he is no longer being required to pay the costs and it is unclear that he paid the fees at any point in the past. We agree with the State. An issue is moot when a court is no longer able to grant effective relief. *In re Cross*, 99 Wn.2d 373, 376-77, 662 P.2d 828 (1983).

Harris argues if this court strikes the LFOs, he would be entitled to reimbursement for costs he already paid. This is not the case. Engrossed Second Substitute House Bill 1783, 65th Leg., Reg. Sess. (Wash. 2018), which became effective June 7, 2018, prohibits trial courts from imposing discretionary legal financial obligations on defendants who are

indigent at the time of sentencing. LAWS OF 2018, ch. 269, § 6(3); *State v. Ramirez*, 191 Wn.2d 732, 738-39, 426 P.3d 714 (2018). However, this same bill included a provision stating that "[n]othing in this act requires the courts to refund or reimburse amounts previously paid towards legal financial obligations or interest on legal financial obligations." LAWS OF 2018, ch. 269, § 20.

Because Harris is not entitled to reimbursement of any fees he may have paid, this court cannot grant effective relief and this issue is moot.

Moving on to Harris's second argument, LFOs other than restitution do not accrue interest. RCW 3.50.100(4)(b). Therefore, we agree that the court erred by imposing interest on the LFOs.

Affirmed, but remanded to strike interest.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____ (result only)
Korsmo, A.C.J.

_____
Fearing, J.

9